475 P.2d 479

The STATE of Arizona, Appellee,

v.

Raymond S. MAHONEY, Appellant.

No. 2076.

Supreme Court of Arizona,
In Banc.

Oct. 16, 1970.

Gary K. Nelson, Atty. Gen., by Carl Waag, Asst. Atty. Gen., Phoenix, for appellee.

Wilson, Compton, Egan & Lincoln, by William M. Egan, Flagstaff, and John M. Levy, Phoenix, for appellant.

McFARLAND, Justice.

Raymond S. Mahoney, hereinafter referred to as defendant, was tried and convicted of transporting marijuana and was sentenced to serve not less than six nor more than seven years in the State Penitentiary. From his conviction and sentence he appeals.

Defendant and one Charles Creel at approximately 1:30 a. m. on the 16th day of March 1969, were driving a Lincoln automobile belonging to the defendant's wife, in Flagstaff, Arizona. Two officers of the City of Flagstaff followed the automobile and clocked it, finding that they were driving 45 m. p. h. in a 35 mile zone. The car was being driven by Charles L. Creel and the defendant was in the rear seat at the time the car was stopped. Officer Robert Smith approached the car on the driver's side and observed the defendant in the back seat. He testified the defendant's movements were jerky and that he reached down real quick to the floor; the officer put his flashlight on him and told him not to move his hands again. The officer asked Creel to see his driver's license and registration certificate for the vehicle. Creel identified himself as Raymond Mahoney and presented a driver's license of the defendant, together with a draft card with the name Raymond Mahoney. The officer testified that after he read the draft card it did not seem to be Creel and questioned Creel as to his true name. After some conversation between the officers, Creel and the defendant, it was admitted that Creel was not Raymond Mahoney and the real names of the parties were then revealed to the officers. Creel was charged with driving a car without a license and the defendant was cited for unauthorized use of a driver's license and permitting an unauthorized person to use his driver's license.

They were informed that they would have to go with the officers to the police station to post bond on the tickets; that in order to permit them to follow the unit to the station the officers would have to make a search of the vehicle for weapons for their protection. A search was made of the vehicle for weapons, and a boa constrictor was found in the vehicle on the front seat. The defendant was asked to place the boa constrictor in the back seat so they could observe if there were any weapons in the vehicle. The snake was then placed in the back on the floor and the officers made a quick search of approximately 20 seconds and found a manila envelope, in which there was a loaded 380 Beretta. The defendant was then arrested on the charge of carrying a concealed weapon. They also found 15 capsules with white powder and two tablets in the envelope, later identified as LSD. The defendant and Creel were then advised of their rights.

Another officer took a suitcase out of the car and placed it in the officers' vehicle in order to deliver it to Creel and the defendant as requested, believing it contained wearing apparel. On the way to the station the officers smelled marijuana and upon arrival searched the suitcase and found the marijuana which was introduced in evidence.

■ The defendant contends in his brief that the court erred in allowing the introduction of the gun for the reason that it was evidence of an unrelated crime. The court in the hearing on the motion to suppress the evidence sustained the motion to suppress any reference to the LSD capsules or alleged fictitious credit cards in the possession of defendant and Creel. Whether to admit essentially irrelevant evidence, when it is connected in the available proof with relevant evidence, is a matter that calls for some discretion by the trial court. Such evidence does not automatically become inadmissible because it tends to reveal a separate criminal act, State v. Villavicencio, 95 Ariz. 199, at page 201, 388 P.2d 245, at page 246:

"Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime. United States v. McCartney, 264 F.2d 628 (7th Cir. 1959) ; Guajardo v. State, 168 Tex.Cr.R. 503, 329 S.W.2d 878 (Tex.Cr.App.1959) ; State v. Kuhnley, 74 Ariz. 10, 242 P.2d 843 (1952) ; 1 Wigmore, Evidence (3rd ed.) § 218; Udall, Arizona Law of Evidence § 115; Wharton's Criminal Evidence (12th ed.) § 284. This principle that the complete story of the crime may be shown even though it reveals other crimes has often been termed 'res gestae'. See, e. g., Guajardo v. State, supra; State v. Kuhnley, supra, and Wharton, supra. Udall has criticized the use of this term as 'meaningless and confusing'. To help unconfound this confusion, we choose to refer to this as the 'complete story' principle, rather than 'res gestae.' "

Evidence which is clearly irrelevant to the issue and serves in no way to explain the circumstances of the crime or arrest could prejudice the defendant and prevent his having a fair trial. See, State v. Little, 87 Ariz. 295, 350 P.2d 756.

■ The trial court believed that possession of the gun was consistent with the crime charged, transporting marijuana. The evidence shows that Creel and the defendant were apparently under the influence of drugs since the officers testified that both exhibited unusual behavior involving quick jerky movements, slurred speech which was uncoordinated, and their eyes were unusual appearing. Under these facts the court properly admitted the gun in evidence as showing the complete story of the transportation of the marijuana and the arrest. State v. Villavicencio, supra.

The defendant also contends that neither the gun or marijuana should have been admitted in evidence and that his motion to suppress this evidence should have been sustained for the reason that they were the fruits of an illegal search and seizure. The defendant cites as supporting his position in this regard State v. Madden, 105 Ariz. 383, 465 P.2d 363; Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 and Preston v. U. S., 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.

In Preston, supra, three men had been arrested in a parked car for vagrancy. Their car had been towed to a garage and searched by the police. The court held that the search was not justified for the reason that it was too remote in time and place from the arrest. Following this decision we made a similar holding in State v. Madden, supra.

The gun was found in an envelope with the LSD and several credit cards. From the evidence it would appear all items were connected with the use of the automobile for the transportation of narcotics.

■ In Preston the court succinctly set forth the principles governing searches in connection with arrest:

"It is argued that the search and sei-zure was justified as incidental to a lawful arrest. Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime. Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 344, 58 L.Ed. 652 (1914); Agnello v. United States, 269 U.S. 20, 30, 46 S.Ct. 4, 5, 70 L.Ed. 145 (1925). This right to search and seize without a search warrant extends to things under the accused's immediate control, Carroll v. United States, supra, 267 U.S., at 158, 45 S.Ct. at 287, 69 L.Ed. 543, and, to an extent depending on the circumstances of the case, to the place where he is arrested, Agnello v. United States, supra, 269 U.S., at 30, 46 S.Ct. at 5, 70 L.Ed. 145; Marron v. United States, 275 U.S. 192, 199, 48 S.Ct. 74, 77, 72 L.Ed. 231 (1927); United States v. Rabinowitz, 339 U.S. 56, 61–62, 70 S. Ct. 430, 433, 94 L.Ed. 653 (1950). The rule allowing contemporaneous searches is justified, for example, by the need to seize weapons and other things which might be used to assault an officer or effect an escape, as well as by the need to prevent the destruction of evidence of the crime—things which might easily happen where the weapon or evidence is on the accused's person or under his immediate control. But these justifications are absent where a search is remote in time or place from the arrest. Once an accused is under arrest and in custody, then a search made at another place, without a warrant, is simply not incident to the arrest." Preston v. United States, 376 U. S. 364, 84 S.Ct. 881.

■ Under the principle of law enunciated in Preston the officers had a right to search the car for weapons and to seize the gun. It was pointed out to the defendant and Creel that the search was made for the protection of the officers. The other articles found in the car were excluded from the evidence with the exception of the marijuana.

■ The defendant contends that the search in regard to the marijuana was illegal for the reason set forth in Madden and Preston, the car having been moved to another place before the search was completed. However, the evidence shows that the suitcase was removed from the car and placed in the officers' car to be delivered to the defendant and Creel. The search of the suitcase falls within the principles set forth in the case of Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed. 419. Chambers involved the admissibility of articles seized from an automobile in which the petitioner was riding at the time of his arrest. The automobile was taken thereafter to the police station and thoroughly searched without a warrant. In passing upon this question the court said:

"There are, however, alternative grounds arguably justifying the search of the car in this case. In Preston, supra, the arrest was for vagrancy; it was apparent that the officers had no cause to believe that evidence of crime was concealed in the auto. In Dyke, supra, the Court expressly rejected the suggestion that there was probable cause to search the car, 391 U.S. [216], at 221–222, 88 S.Ct. [1472] 1475–1476 [20 L.Ed. 2d 538]. Here the situation is different, for the police had probable cause to believe that the robbers, carrying guns and the fruits of the crime, had fled the scene in a light blue compact station wagon which would be carrying four men, one wearing a green sweater and another wearing a trench coat. As the state courts correctly held there was probable cause to arrest the occupants of the station wagon that the officers stopped; just as obviously was there probable cause to search the car for guns and stolen money.

In terms of the circumstances justifying a warrantless search, the Court has long distinguished between an automobile and a home or office. In Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280,

69 L.Ed. 543 (1925), the issue was the admissibility in evidence of contraband liquor seized in a warrantless search of a car on the highway. After surveying the law from the time of the adoption of the Fourth Amendment onward, the Court held that automobiles and other conveyances may be searched without a warrant in circumstances which would not justify the search without a warrant of a house or an office, provided that there is probable cause to believe that the car contains articles that the officers are entitled to seize. * * *

The Court also noted that the search of an auto on probable cause proceeds on a theory wholly different from that justifying the search incident to an arrest:

'The right to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law.' 267 U.S. at 158–159, 45 S.Ct. at 287.

Finding that there was probable cause for the search and seizure at issue before it, the Court affirmed the convictions. * * *

In enforcing the Fourth Amendment's prohibition against unreasonable searches and seizures, the Court has insisted upon probable cause as a minimum requirement for a reasonable search permitted by the Constitution. As a general rule, it has also required the judgment of a magistrate on the probable cause issue and the issuance of a warrant before a search is made. Only in exigent circumstances will the judgment of the police as to probable cause serve as a sufficient authorization for a search. Carroll, supra, holds a search warrant unnecessary where there is probable cause to search an automobile stopped on the highway; the car is movable, the occupants are alerted, and the car's contents may never be found again if a warrant must be obtained. Hence an immediate search is constitutionally permissible.

Arguably, because of the preference for a magistrate's judgment, only the immobilization of the car should be permitted until a search warrant is obtained; arguably, only the 'lesser' intrusion is permissible until the magistrate authorizes the 'greater.' But which is the 'greater' and which the 'lesser' intrusion is itself a debatable question and the answer may depend on a variety of circumstances. For constitutional purposes, we see no difference between on the one hand seizing and holding a car before presenting the probable cause issue to a magistrate and on the other hand carrying out an immediate search without a warrant. Given probable cause to search, either course is reasonable under the Fourth Amendment."

In Madden we only passed upon the question of remoteness of the car at the time of the search from the place the arrest was made. In the instant case the officer thinking the suitcase contained wearing apparel which the defendant and Creel needed, took it from the car at their request, to give to them at the station. On the way to the station the officer smelled marijuana in the suitcase.

Detective Stamper testified as follows:

"A Well, the suitcase had been on the back seat of the vehicle and after Sergeant Roberts got the stick in the box to get the snake out and after he made the inventory of the vehicle I put the snake in the box and also the suitcase in the back of my detective vehicle. They had said that they wanted the suitcase and I was taking it to them to see that they had clothing.

Q When did they tell you that they wanted the suitcase?

A They didn't tell me. Officer Smith had said that the fellow wanted his suitcase.

Q Okay. Now, during the trip to the station with the suitcase did anything unusual happen?

A Yes, sir. On the way to the station a couple of times I thought that I

smelled marijuana. It was very strong in my vehicle.

Q You are familiar with and can identify the odor of marijuana?

A I am familiar with it, yes, sir.

Q Did you then further investigate this when you got to the station?

A I did.

Q What did you do?

A I suspected, by the time I got to the station I suspected that the order could possibly be coming from the suitcase. It was locked but I pulled the end of it apart and I could see what appeared to me to be marijuana in the suitcase.

Q Did you then open the suitcase?

A I did.

Q Is this the particular suitcase—

A Yes, sir, it is."

The officers had probable cause to believe marijuana was in the suitcase, and hence searching the suitcase was not an unreasonable search. Chambers, supra; also see U. S. v. Blackburn, 389 F.2d 93 (C.A. 6 Cir.).

■ The defendant next contends that the state failed to prove a prima facie case of transporting marijuana as required under A.R.S. § 36–1002.07, as amended. He maintains that it was the intent of the legislature that the word "transport" would indicate more than finding of marijuana in a car traveling approximately more than one mile. With this contention we cannot agree. No duty is upon the state to establish great distance or change in locality where transportation is required. McGee v. State, 103 Tex.C.R. 654, 281 S.W. 1052, State v. Lowe, 38 N.M. 1, 27 P.2d 983; Boyd v. State, 239 Ala. 578, 195 So. 767.

■ The evidence was that the suitcase was placed in defendant's car in Hollywood and transported to Flagstaff. However, the defendant contends the state did not prove knowledge of the contents of the suitcase. The court properly instructed the jury on transport, knowledge and intent and we hold that there was sufficient evidence to submit to the jury the question of whether defendant was guilty of transport of marijuana.

■ Defendant's last contention is that the jury panel was not selected according to law and that he was discriminated against because he was not among the group of prospective jurors is without merit. This court has held repeatedly that denying a challenge to the panel on the ground it was not selected, according to law, is not fatal unless prejudice can be shown. State v. McGee, 91 Ariz. 101 at p. 109, 370 P.2d 261; State v. Little, 87 Ariz. 295, 350 P.2d 756; Midkiff v. State, 29 Ariz. 523, 243 P. 601. In order to establish prejudice or denial of due process, it would be necessary for defendant to show a systematic jury discrimination which excluded from the jury defendant's peers and equals of the community. Strauder v. West Virginia, 100 U.S. 303, 25 L.Ed. 664.

■ There was no prejudice to the defendant by reason of selection of the jurors from those qualified to vote at the general election on November 5, 1968, in Coconino County. While the legislature has since changed the method of selecting a jury as set forth in A.R.S. § 21–301, subsec. A, the method used in selecting jurors in the instant case does not show prejudice to the defendant. The method offered a larger prospective list than provided for in § 21–301, subsec. A, as amended.

Judgment affirmed.

LOCKWOOD, C. J., STRUCKMEYER, V. C. J., and UDALL and HAYS, JJ., concur.