520 P.2d 508

**STATE of Arizona, Appellee,**

v.

**Z. L. LAMBERT, Appellant.**

**No. 2754.**

Supreme Court of Arizona,
In Banc.

April 3, 1974.

Rehearing Denied May 7, 1974.

Gary K. Nelson, Atty. Gen., Phoenix, John S. O'Dowd, Asst. Atty. Gen., Tucson, Charles L. Weninger, Certified Third Year Law Student, Tucson, Stanley L. Patchell, Asst. Atty. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender, Ed Bolding, Former Pima County Public Defender, Richard Van Duizend, Frederick S. Klein, Asst. Public Defenders, Tucson, for appellant.

LOCKWOOD, Justice:

The appellant, Z. L. Lambert, was accused of murder in the second degree on February 9, 1972, of one Ollie Jones. After a preliminary hearing, the appellant was bound over to the Superior Court and on arraignment on March 14, 1972 pleaded not guilty to the information.

He was examined by two Tucson psychiatrists pursuant to a motion filed under A. R.S. § 13–1621. The reports were that he was competent to stand trial but that he was a mentally deficient chronic alcoholic, suffering from chronic brain syndrome.

In August of 1972 pursuant to a motion by the State, trial date was continued and the amount of bond reduced, bail was posted and defendant released. Trial commenced on October 31, 1972.

Two witnesses were called and testified, whereupon court was recessed until the next day. On the following day when the trial was to resume, the defendant failed to appear. There was considerable discussion regarding where he was and why he was not present. The court forfeited the bond and issued a bench warrant for the defendant.

During the discussion, apparently the defendant appeared in court, in an intoxicated condition. The court denied a motion for new trial and the trial recommenced in the afternoon.

The facts developed as follows: Apparently the defendant went to the house of Gina Mae, the sister of the deceased Ollie Jones to pick up some of his money which she was holding for him. There defendant entered into a conversation with Ollie Jones regarding payment of a penny which the defendant owed on the purchase of a bottle of liquor. As he stood facing Jones he fired a gun several time at Jones. Jones turned and entered the house, complaining that he had been shot by the defendant. He was taken to the hospital, where he died shortly after arriving.

Shortly thereafter Officer Ovsevitz on his regular patrol, was stopped by the brother of Ollie Jones, who informed him that there had been a shooting. They proceeded to a boarding house where they found the defendant. Ovsevitz placed him under arrest and informed him of his constitutional rights.

He advised the defendant that he had the right to remain silent, that anything he said could be used against him in a court of law, that he had the right to the presence of an attorney to assist him prior to the questioning and to be with him during the questioning if he desired. The officer stated if he could not afford an attorney he had the right to have an attorney appointed for him prior to questioning. After each right was read to him, he was asked if he understood it. At the end the officer repeated, "Do you understand these rights that I have just read you?" The defendant replied "yes", in each case. Ov-

sevitz then asked: "If now, having been advised of these rights and understanding these rights, will you answer my questions?" and the defendant replied, "yes".

The defendant then made an oral confession to Officer Ovsevitz. The officer then asked him where the gun was and he walked towards his room in the boarding house with the officer behind him, and pointed to a gun on a little bureau. The officer seized the gun which had three bullets in the cylinder, and picked up two bullets and an empty shell that were on the floor below the bureau. The officer further stated that the defendant had an "alcoholic breath" and that his speech was slurred to a certain extent.

The defendant was taken to jail under arrest by a uniformed officer. Approximately five or six hours later Officer Ovsevitz returned to the residence and secured certain other evidence.

The court suppressed the confessions and statements to the officers and permitted the introduction of the gun and the bullets found in the defendant's bedroom where he was arrested.

The defendant presents three questions:

"(1) Was not defendant deprived of his liberty without due process of law by the admission of evidence, to wit, a pistol, five bullets and a shell casing, obtained as a result of an involuntary confession?

"(2) Even if the pistol and bullets were properly admitted, was not defendant denied his right to a fair trial by the failure of the trial court to give an instruction on voluntary manslaughter?

"(3) Even if his conviction was proper, in view of defendant's clear need for psychiatric and medical treatment does not defendant's sentence of imprisonment violate the objectives of sentencing and constitute, therefore, an abuse of discretion?"

 Regarding question number one, the gun and shells taken at the same time were properly admitted as evidence at the trial because the defendant voluntarily consented to the search, after being given the Miranda warnings, obviating the need for a search warrant. State v. Michael, 107 Ariz. 126, 483 P.2d 541 (1971).

 With regard to question number two there was no evidence justifying giving of an instruction on voluntary manslaughter. Voluntary manslaughter is the unlawful killing of a human being without malice upon a sudden quarrel or heat of passion. A.R.S. § 13-455. The defendant used a gun from which malice may be inferred. The court did not err in failing to give an instruction on voluntary manslaughter. State v. Edgin, 110 Ariz. 416, 520 P.2d 288 (1974); State v. Brierly, 109 Ariz. 310, 509 P.2d 203 (1973).

 Regarding question number three, the sentence is within the permissible statutory limits. We have held under such circumstances we will not disturb the trial court's judgment. State v. Pickard, 105 Ariz. 219, 462 P.2d 87 (1970).

Judgment affirmed.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.