546 P.2d 814

**The STATE of Arizona, Appellee,**

v.

**Judi Carol NOLES aka Judith Carol Forsberg, Appellant.**

**No. 3254.**

Supreme Court of Arizona,
In Banc.

Feb. 19, 1976.

Rehearing Denied March 23, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Frank T. Galati, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender, by Garth V. Smith, Deputy Public Defender, Phoenix, for appellant.

CAMERON, Chief Justice.

This is an appeal from a jury verdict and judgment of guilt to the crimes of robbery with a gun or deadly weapon, two counts, A.R.S. § 13–641 and § 13–643, and assault with a deadly weapon, A.R.S. § 13–249, and a sentence of not less than ten years nor more than life on each charge. The sentences imposed for the robbery charges were made to run consecutively, the sentence on the assault count to run concurrently with the other two sentences. .

We are asked to answer the following questions on appeal:

1. Was it error for the trial court to deny defendant's motion to suppress evidence?

2. Was it error for the trial court to deny defendant's motions for a mistrial because of the introduction of irrelevant and prejudicial evidence?

3. Was it error for the trial court to fail to give defendant's instruction regarding the in-court identification of the defendant?

4. Was the sentence excessive?

The facts necessary for a determination of this matter on appeal are as follows. On the morning of 26 April 1974 a robbery occurred at the Manor Drug Store which is located at 1147 East Glendale Avenue, Phoenix, Arizona. The victims of the robbery were the owners of the drug store, Mr. Norval Barber and his wife, Mrs. Juanita Barber. Two robbers, each carrying a gun, took narcotics, $140.00 from the two cash registers, Mr. Barber's billfold and his wife's purse, both of which contained credit cards. During the robbery, Sandra Sue Carpenter, who worked at the Manor Drug Store, was ordered out of the bathroom at gunpoint and made to sit on the floor.

As the robbers were about to leave, Dr. John F. Ganem, a friend of the Barbers, entered the store and said, "Where is Mr. Barber?" Dr. Ganem then heard someone say "Get in the back," whereupon he turned and saw an individual with a gun pointed at his chest. Dr. Ganem threw out his hands deflecting the arm holding the gun and grabbed the person's wrist and pushed the gun away, pointing it backwards. The assailant staggered backwards and Dr. Ganem fell forward which caused them to shatter a glass display case. As they struggled, Dr. Ganem was suddenly pulled back and struck over the head several times.

A month later, on 29 May 1974, at approximately 4:00 p. m. in Rosemead, California, the defendant Judi Noles jumped out of a green van as it entered the intersection of Rosemead Boulevard and Valley Boulevard. She ran over to Patrolman Hoffman's police car, opened the front door, got into the car, and learned forward with her face down to her knees. Judi told Patrolman Hoffman that she wanted to be helped, that someone was trying to kill her, and that she wanted to talk to detectives. Patrolman Hoffman then drove her the two and a half miles to the Temple City Sheriff's Station.

At the police station Judi informed Detective Sergeant Manser that she had been living with Harvey Noles, who was wanted for robberies in Phoenix, Arizona, and that he had given her a forged money order and had sent her into a liquor store that afternoon to cash it. When she returned to the van and informed Harvey Noles that she had failed in her attempt to cash the forged money order, he became furious with her and struck her in the face with an arrow and hit her with a dog food can. Judi stated that this beating was the reason she jumped from the van and ran to Patrolman Hoffman's police car.

The defendant informed the police officers that she was living in the Six-Forty Motel with Harvey Noles, and that he had two loaded .38 revolvers in the apartment. After the officers verified that there was a warrant outstanding for the arrest of Harvey Noles, they arranged to meet police from another department at the motel. Upon arriving at the motel, the officers found the van described by Judi Noles, and the description she had given of Harvey Noles matched the description given by the manager of the motel of the man living in apartment Number 45.

The police obtained a pass key from the manager which they used to enter the room without announcing their identity or purpose. The police, who entered with their guns drawn, found Harvey Noles lying on the bed. He was immediately placed under arrest, handcuffed and made to sit on the floor in the middle of the room. The police then searched the nightstand next to the bed and found two revolvers in the drawer. After the seizure of the

guns, Harvey Noles requested that the police remove all of his personal property from the motel and take it to the police station for safekeeping. A purse which belonged to Judi Noles was included in this property taken from the motel and was returned to her at the Temple City police station.

On 6 June 1974 Harvey Noles and Judi Noles were indicted in Maricopa County for two counts of armed robbery of Mr. and Mrs. Barber, and two counts of assault with a deadly weapon of Sandy Carpenter and Dr. Ganem. A motion for severance was granted and as a result of a plea bargain, Harvey Noles plead guilty to two counts of robbery and was sentenced to two concurrent sentences of 15 to 20 years. The charge of assault with a deadly weapon was dismissed. Judi Noles moved to suppress physical evidence which was denied on 20 November 1974. On 25 November 1974, a jury found Judi Noles guilty of two counts of robbing Mr. and Mrs. Barber and one count of assault with a deadly weapon on Sandy Carpenter. Defendant was sentenced on 18 December 1974 and from this verdict and judgment she appeals.

## WAS IT ERROR NOT TO SUPPRESS EVIDENCE?

█ The defendant in her motion to suppress and on appeal argues that certain evidence was erroneously admitted. Since the record indicates that, with the exception of the two guns from the nightstand, all the evidence complained of was taken with Harvey Noles' or the defendant's permission, we will concern ourselves with the denial of the motion to suppress as to the two guns only. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L. Ed.2d 854 (1973); *State v. Lambert,* 110 Ariz. 460, 520 P.2d 508 (1974).

There is no question that there was a valid arrest and a search as a result thereof. This brings it squarely within the provisions of the United States Supreme Court case of *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), and the extent of a search as an incident to a lawful arrest. The United States Supreme Court in *Chimel* stated:

" * * * When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

"There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. (footnote omitted) The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less." *Chimel v. California,* 395 U.S. at 762–63, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.

Prior to the search of the nightstand, Harvey Noles had been handcuffed with his hands behind his back and made to sit on the floor of the motel room. Four

armed police officers had made the arrest. Although these facts clearly indicate that before the search of the nightstand, Harvey Noles' freedom of movement was severely restricted, we believe the two guns were still admissible. This was not a routine search of areas out of the immediate control of the defendant, but a search of an area within the immediate control of the defendant at the time of arrest and an area of easy access by the defendant had he been able to break free of restraint. We do not believe *Chimel*, supra, requires the police at this juncture to refrain from searching for the guns or eliminating places of easy access by the defendant where they might be concealed. The potential for misuse of the guns by the defendant or others dictates that the police be allowed to search for their presence at the first opportunity after arrest.

We find no error in the failure of the trial court to grant the motion to suppress.

## DID THE TRIAL COURT ERR IN NOT GRANTING DEFENDANT'S MOTIONS FOR A MISTRIAL?

■ Defendant next argues that the trial court erred in permitting Officer Manser to testify that defendant attempted to cash a forged money order at the direction of her husband Harvey Noles. The defendant objected on the grounds that this testimony was irrelevant, prejudicial and evidence of a prior bad act. We disagree. The money order was made payable to Juanita Kathleen Barber, one of the victims of the robbery. This testimony and evidence was relevant since it goes to the question of defendant's involvement in the armed robbery and is a part of the complete story of the alleged crime. We have stated:

"Evidence of other criminal acts is admissible when so blended or connected with the crime of which defendant is accused that proof of one incidentally involves the other or explains the circumstances of the crime. (citations omitted) This principle that the complete

story of the crime may be shown even though it reveals other crimes has often been termed 'res gestae'. * * * [W]e choose to refer to this as the 'complete story' principle, rather than 'res gestae.' " *State v. Villavicencio*, 95 Ariz. 199, 201, 388 P.2d 245, 246 (1964). See also *State v. Mahoney*, 106 Ariz. 297, 475 P.2d 479 (1970), cert. denied 401 U.S. 917, 91 S. Ct. 898, 27 L.Ed.2d 818 (1971); *State v. Hutton*, 109 Ariz. 356, 509 P.2d 626 (1973).

We have also stated:

" * * * when the evidence tends to establish intent, absence of mistake, or accident, identity, and common scheme or plan, it may be admissible even if the evidence also shows evidence of misconduct or prior bad acts." *State v. Kelly*, 111 Ariz. 181, 185, 526 P.2d 720, 724 (1974).

This evidence showed not only the complete story but also the identity of the defendant. We find no error.

Finally, the defendant alleges that certain prosecutorial tactics and questioning were improper and warranted the granting of a mistrial. In particular defendant objected on the following grounds:

"MR. DOVE: I want to make a Motion for a Mistrial. I think the comment, the statement made by the County Attorney, 'Why would the police want to beat up a sweet girl like you?' was highly improper and very prejudicial to the effect that the jury sat over there and laughed at it. I think it is misconduct on the part of the County Attorney.

"THE COURT: Did you wish to respond?

* * * * * *

"MR. PAOLETTI: Your Honor, I think they were laughing at the—at the conclusion. They were laughing at the sustaining of the objection, and everything that went on behind that. Besides, I think it is a proper question as to why.

"THE COURT: Well, I don't think it is a proper question and I sustained the objection. However, the motion is denied."

 We agree with the defendant and find this line of questioning improper. Thus, the trial court was correct in sustaining the objection. However, we do not believe that a mistrial was mandated. These questions were not sufficiently prejudicial to require the granting of a new trial. We have stated:

"* * * Misconduct alone will not cause a reversal, as a new trial should not be granted to punish counsel for his misdeeds * * *." *State v. Moore*, 108 Ariz. 215, 222, 495 P.2d 445, 452 (1972).

## WAS IT ERROR NOT TO GIVE AN INSTRUCTION CONCERNING THE IN–COURT IDENTIFICATION?

 Defendant requested an instruction as mandated by *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951, rehearing denied 104 Ariz. 439, 454 P.2d 981 (1969), cert. denied 397 U.S. 965, 90 S.Ct. 1000, 25 L.Ed. 2d 257 (1970). This instruction was refused, the court stating:

"Defendant's Request No. 1, which has to do with the lineup identification, has been refused as not applicable to the facts, although it is a correct statement of the law."

Having reviewed the transcript we agree with the trial court that it does not apply to the facts of this case. Mr. Barber who identified Judi Noles as one of the robbers was never shown a photo of her. Dr. Ganem, who made a very weak in-court identification of the defendant, was shown a series of photographs one of which was a picture of the defendant but did not make an identification. Although Dr. Ganem selected two of these photos as possible perpetrators of the crime, he was unable to make a definite pretrial identification from any of these photographs. Dr. Ganem testified:

"A Well, I think that I picked at least two, but I am not certain that I picked the right person, and neither was I informed that I had.

"Q Did the officer say anything in regards to whether or not you hadn't picked out the right person?

"A No, sir.

"Q To this day, do you know whether you picked out the right person?

"A No, sir, I do not."

The three California police officers who arrested Judi Noles were shown photographs of her before the trial. Since the officers were not testifying that the defendant committed the robbery in Phoenix but rather were testifying, among other things, that she was the individual they arrested in California, we believe there was no violation of defendant's constitutional rights. We find no error.

## WAS THE SENTENCE EXCESSIVE?

 Finally, defendant contends that her sentence was excessive. Judi Noles was given a sentence of not less than ten years nor more than life on each of the three charges. Two of the sentences were concurrent, but the sentence for robbery of Juanita Barber was not to commence until expiration of the sentence for robbery of Norval Barber. We have stated:

"The legislature has given the trial court broad discretion in sentencing a defendant for a period within the statutory minimum and maximum. Because a defendant appears in person before the trial judge, the trial judge is, in most instances, better able than we to evaluate the defendant and his circumstances and to determine what action will most likely rehabilitate him to constructive activity. (citation omitted) Accordingly, this Court has consistently held that the pronouncing of a sentence is within the sound discretion of the trial court and that we will uphold a sentence if it is

within the statutory limits unless there is a clear abuse of discretion. (citations omitted)" *State v. Smith,* 107 Ariz. 218, 219, 484 P.2d 1049, 1050 (1971).

We find no error.

Judgments and sentences affirmed.

HAYS and HOLOHAN, JJ., concur.

STRUCKMEYER, Vice Chief Justice (dissenting).

This case raises a basic question concerning the permissible scope under the Fourth Amendment to the Constitution of the United States of a search incident to a lawful arrest. The question as to the reasonableness of the search is dependent upon the facts and circumstances, the total atmosphere, of the case, and "those facts and circumstances must be viewed in the light of established Fourth Amendment principles." *Chimel v. California,* 395 U.S. 752, 765, 89 S.Ct. 2034 at 2041, 23 L.Ed.2d 685 at 695 (1969).

These facts and circumstances set forth by the majority in their decision merit stressing. Four armed police officers entered the motel room of Harvey Noles, placed him under arrest, handcuffed his hands behind his back and forced him to sit on the floor of the motel room while they searched the motel room for two guns they were told he had.

The arrest at the point where Noles was handcuffed was an accomplished fact. Nothing was left for the officers to do then but take him to the police station for booking. It is clear, therefore, that the arresting officers intended to search Noles' room, otherwise there would be no reason whatsoever for them at this point to compel him to sit on the floor.

In *Chimel v. California,* supra, Justice Potter Stewart, writing for the majority, put it this way:

"There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'— construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

There is no comparable justification, however, for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less." 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694.

The asserted justification for searching the night stand drawer was the danger that this man, who had his hands cuffed behind his back and was surrounded by four armed police officers, might gain possession of a weapon. I disagree with the majority's conclusion that the night stand was an area within his "immediate control" after Noles' arrest and restraint. This ignores the reality of not only his restraint but the simple, unalterable fact that the only action necessary to conclude the arrest was to remove Noles from his room to a place of confinement.

The facts of this case, when examined in the light of Fourth Amendment principles, compel me to conclude that the search was unreasonable and that Judi Carol Noles' conviction should be reversed.

GORDON, J., concurs.