591 P.2d 1309

**In the Matter of ONE 1969 CHEVROLET 2–DOOR, I. D. NO. 136379K430353, LICENSE NO. PSH–616.**

**Carl MOORE, Appellant,**

v.

**STATE of Arizona, Appellee.**

**No. 1 CA–CIV 3844.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 27, 1979.

Maricopa County Legal Aid Society by William E. Miller, Timothy M. Hogan and William G. Poach, Jr., Phoenix, for appellant.

Charles F. Hyder, Maricopa County Atty. by Daniel F. McIlroy, Deputy County Atty., Phoenix, for appellee.

## OPINION

JACOBSON, Judge.

This appeal from an order forfeiting an automobile pursuant to A.R.S. § 36–1041, requires a determination of whether a plea agreement which results in the dismissal of the underlying criminal prosecution precludes forfeiture of the vehicle involved in that criminal prosecution, and if not, whether the search of the vehicle violated the 4th Amendment to the U. S. Constitution, thus voiding the forfeiture.

The facts taken most favorably in support of the trial court's order are that on July 7, 1976, a crackdown on approximately 150 heroin dealers was underway in Maricopa County. In order to effectuate this crackdown and to avoid alerting the criminal suspects involved, the Phoenix Police Department, Maricopa County Sheriff's Office and the Narcotics Division of the Department of Public Safety had prepared a coded master list of these suspects by number. Each number was assigned a packet, which consisted of the name of the suspect, a photograph, physical description, home address, type of automobile driven and other pertinent information. Thus, when a grand jury indictment was returned against a particular criminal defendant, law enforcement officers were notified of this fact through the coded master list number.

On the afternoon of July 7, 1976, Department of Public Safety Narcotics Officer Hughes and Phoenix Police Officer Ryan were notified by radio by the Phoenix Police Department that the grand jury had indicted appellant Carl Moore for selling heroin and that he was to be arrested. This information was relayed on a special police radio frequency and identified Moore by code number. Officer Ryan personally knew Moore by sight and by his automobile.

A short time thereafter, the officers saw Moore driving his automobile, the 1969 Chevrolet which is the subject of this forfeiture proceeding. After following Moore for approximately three or four blocks in their marked patrol car with lights flashing and siren on, Moore stopped in the 1600 block of

West Yuma Street in Phoenix, Arizona. Apparently, at the point of stoppage, the car was in a legal parking area. Moore had riding with him his 13-year-old son and a 16-year-old friend of his son. Neither youngster was a licensed driver.

After Moore was stopped, officer Ryan approached the driver's side of the vehicle and advised Moore that he was under arrest for selling heroin. Moore got out of the car, and was handcuffed and placed in the back seat of the patrol car. In the meantime, the two youngsters got out of the car, taking the car keys. Officer Ryan then returned to the vehicle for the stated purpose of conducting an inventory search of the 1969 Chevrolet. At this point, the testimony differs. Moore testified that prior to being stopped, he was on his way to take his son to his mother-in-law's house which was located at 1709 W. Yuma, approximately one-half a block from the point where Moore was stopped. He further testified that he had advised the officers that his son could take the car keys to the mother-in-law. Neither officer recalled being so advised.

Moore also testified that when he got out of the car, all the doors were closed and the windows up. The officers testified that the doors on both the driver's and passenger's sides were left open. At this point, apparently the boys had the keys to the automobile and were playing catch with them in order to keep them from the officers. Upon the officers' request, Moore ordered the boys to deliver the keys to the officers.

Officer Ryan then proceeded to do his inventory search. During this search a balloon of heroin was found on the floor of the automobile in front of the driver's seat. How the balloon came to the officer's attention is somewhat unclear.

"Q: Okay, so you indicated in there, I noted in your direct examination, one of the first things you said when you referred to the balloon was that it was in plain sight or plain view?

"A: That's correct.

"Q: From where, from outside the vehicle or inside?

"A: Outside, inside, it doesn't matter.

"Q: So, standing outside the vehicle, you could see the balloon?

"A: That is correct.

"Q: You were outside the vehicle when you saw the balloon?

"A: Either there or just standing next to it, or starting to lean in, one or the other. It was—I walked up, started the search and there it was.

"Q: You can't tell me whether you were actually inside the vehicle or still outside the vehicle.

"A: No, I couldn't."

After discovering the balloon of heroin, Moore was again arrested for possession of heroin and the automobile seized.

Subsequently, Moore was charged with possession of heroin, together with two counts of sale of heroin arising out of the incidents which caused Moore's stop in the first place. As a result of a plea bargain, Moore pled guilty to one count of sale of heroin and the possession of heroin charge which was the basis of the forfeiture proceedings was dismissed with prejudice.[1] The plea agreement executed by Moore provided: "That this plea agreement in no way affects a civil vehicle forfeiture proceeding pursuant to A.R.S. § 36–1041 to § 36–1048 or A.R.S. § 32–1993, if applicable." This agreement was entered into on November 9, 1976. The state gave notice of intent to forfeit on July 23, 1976 and this was answered by Moore on August 25, 1976. The forfeiture hearing occurred on January 18, 1977.

On appeal, Moore contends the forfeiture was invalid because: (1) the plea agreement precluded forfeiture; (2) forfeiture under the Arizona statute may not take place where mere possession of a narcotic is shown; (3) there was no showing that Moore knew of the presence of the heroin;

1. Since it has not been raised, we do not determine what collateral estoppel effect, if any, the dismissal with prejudice of the underlying criminal charge has on the forfeiture proceedings.

(4) that the inventory search was improper; and (5) that the initial stop of the vehicle was improper.

■ We recently held in the case of *In re One 1965 Ford Econoline Van, I.D. No. E14TH591372*, 121 Ariz. 477, 591 P.2d 569 (1979), that the Arizona forfeiture statutes allow forfeiture of a vehicle where only personal possession of the controlled substances is shown and that such a statute is constitutional. We therefore need not further discuss this issue.

We further held in *1965 Ford Econoline* that a plea agreement containing exactly the same language as to civil forfeiture as is present here was not ambiguous where the sequence of events leading to forfeiture was arrest, seizure of vehicle, notice of intent to forfeit, plea agreement and plea of guilty to the charge giving rise to the forfeiture, and then forfeiture. We went on to hold in that case that inclusion of the forfeiture provision in the plea agreement satisfied our holding in *In re A 1972 Dodge Van, California License # 247–FNB*, 24 Ariz.App. 337, 538 P.2d 766 (1975).

■ However, Moore raises another contention of ambiguity not touched on in *1965 Ford Econoline*, that is, where the underlying criminal charge giving rise to forfeiture is dismissed, do the words "if applicable" contained in the civil forfeiture provision create an ambiguity as to whether or not the state intends to go forward with the forfeiture?

We first note that Moore does not contend that he in fact was confused as to whether or not that provision applied to his vehicle. Nor did he testify that he was of the opinion that because of the dismissal of the underlying criminal charge, the forfeiture of his vehicle would not take place. Rather, he relied upon a patent ambiguity under the particular set of facts of this case.

As we hinted in *1965 Ford Econoline*, this clause is not ambiguous. In our opinion, a fair reading of the clause and the words "if applicable" means that if a vehicle was involved in the underlying criminal charge, and if the underlying criminal charge would give rise to the forfeiture of the vehicle under A.R.S. § 36 1041 through § 36 1048 or A.R.S. § 32 1993, then the clause in the form plea agreement became "applicable" to allow forfeiture in spite of that agreement.

We admit that where the underlying criminal charge giving rise to the forfeiture is dismissed, a strained interpretation of the phrase "if applicable" might produce an ambiguity. However, in the absence of any contention that in fact an ambiguity was created, we will not find one contrary to what appears to be the clear intent of this clause.

Moore next contends the search of his vehicle was illegal and therefore evidence of the illegal substance cannot support a forfeiture. *See One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). The state first seeks justification of the search on the basis of a valid inventory. (We note this is the subjective basis upon which the police officer relied in making the search.)

Generally, inventory searches have been upheld where two essential requirements have been shown to exist: (1) The law enforcement officials must have lawful custody or possession of the automobile and (2) the objective facts indicate that an inventory search was reasonable under the circumstances. *In re One 1965 Econoline, I.D. No. E16JH702043*, 109 Ariz. 433, 511 P.2d 168 (1973).

■ In our opinion this "inventory search" must fail on the first ground, and therefore we need not discuss the second, although this ground is shaky at best.

In this case, at the time the Moore vehicle was stopped, it was legally parked on a public street. There is no evidence that the vehicle was creating a traffic hazard or that the police were in any manner required to take physical custody of the vehicle to protect the public safety or the safety of the vehicle itself. The only facts the state can point to in justifying "lawful custody" is that the two young boys were not licensed

drivers and therefore they could not remove the car.

In our opinion, this is not sufficient. If the sole concern of the law enforcement officers was the protection of the vehicle itself, there is no evidence that leaving the car in the physical custody of the two young men would not have accomplished this purpose. Even if we assume that Moore did not inform the officers of the availability of the mother-in-law to take custody of the car, the simple fact is the officers made no inquiry of those at the scene as to alternative methods of "protecting" the vehicle, other than police custody. Apparently, the officers operated on the premise that once the driver was legally arrested, they automatically came into custody of the vehicle, justifying an inventory search. In absence of facts which would reasonably justify the arresting officers taking custody of the vehicle, these officers cannot bootstrap themselves into custody based solely on the arrest of the driver. *See Virgil v. Superior Court Placer County*, 268 Cal.App.2d 127, 73 Cal.Rptr. 793 (1968); *State v. Singleton*, 9 Wash.App. 327, 511 P.2d 1396 (1973). We find no reasonable justification present here which would require the police to take "lawful custody" of the vehicle and hence the "inventory search" must fail.

■ On appeal, the state argues that in any event, the balloon of heroin was in "plain view" or the right to search the immediate area of the vehicle was incidental to arrest, and thus the search was justified. As to the "incident to arrest" theory, it is clear that at the time the search was commenced, Moore was handcuffed and in the back seat of the patrol car. In this situation, the front seat of Moore's automobile had passed out of the area "within his immediate control" justifying a search incident to arrest. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). *See generally State v. Noles*, 113 Ariz. 78, 546 P.2d 814 (1976).

It is true that under the "plain view" doctrine a police officer who is lawfully in a location to observe, may seize contraband which his mere observation reveals to his senses. *State v. Pine*, 8 Ariz.App. 430, 446 P.2d 940 (1968), *cert. denied*, 395 U.S. 962, 89 S.Ct. 2103, 23 L.Ed.2d 747 (1969). However, insofar as the doctrine is applicable here, the officer must have lawfully obtained his vantage point. The burden is on the state to prove this element. *See State v. Sauve*, 112 Ariz. 576, 544 P.2d 1091 (1976).

Taking the facts in the light most favorable to upholding the trial court's determination, we can say that based upon the officers' testimony that the doors to the Moore vehicle were open, he could have lawfully moved to a position to close them, as the open doors might have created a traffic hazard. If at that point, the officer had observed the balloon which he reasonably suspected contained heroin, its seizure would have been proper. *See State v. Gutierrez*, 27 Ariz.App. 226, 553 P.2d 1211 (1976).

■ It is at this crucial point, however, that the evidence breaks down. It is unclear from this record where the officer was located when the offending balloon was observed—outside the vehicle where the officer had a lawful right to be, or inside the vehicle where no lawful right of presence existed. (In fact, the officer testified he discovered the balloon *after* he began his inventory search.) As indicated by the testimony previously quoted in this opinion, the officer was simply unable to answer this question. Given the fact, as we have determined, that the officer had no right to be inside the vehicle and the burden resting on the state to prove the validity of the warrantless search, we must conclude, based upon this record, that the state has not carried its burden in proving the seizure lawful under the "plain view" doctrine.

We therefore hold that the seizure of the balloon was unlawful and thus will not support the forfeiture of the vehicle involved. Since this matter must be reversed on this ground, we need not discuss the other contentions raised.

Judgment of forfeiture reversed and the matter remanded with directions to order the vehicle involved returned to Moore.

SCHROEDER, P. J., concurs.

OGG, Chief Judge, dissenting.

I must respectfully dissent. The evidence was in dispute as to whether the car door was open and whether the officer saw the balloon of heroin in plain view from outside the vehicle. Even if he had not seen it until he entered the vehicle, I find nothing improper. The officers had made a valid arrest; there were no licensed drivers to remove the car from the public street; the officers had a right and a duty to take possession of the vehicle. An inventory search would have been reasonable under the circumstances. Viewing the evidence in the light most favorable to upholding the decision of the finder of fact, I would affirm.