234 P.3d 611

**STATE of Arizona, Appellee,**

v.

**Daniel Roy ORGAN, Appellant.**

**No. 1 CA–CR 09–0141.**

Court of Appeals of Arizona, Division 1, Department E.

June 17, 2010.

---

44

Terry Goddard, Attorney General by Kent E. Cattani, Chief Counsel, Criminal Appeals/Capital Litigation Section and Sarah E. Heckathorne, Assistant Attorney General, Phoenix, Attorneys for Appellee.

The Law Office of Richard D. Coffinger by Richard D. Coffinger, Glendale, Attorney for Appellant.

OPINION

WEISBERG, Judge.

¶ 1 Daniel Roy Organ ("Defendant") appeals his convictions for possession of narcotic drugs, possession of dangerous drugs, and possession of drug paraphernalia. Defendant argues that the trial court erred in denying his motions to suppress the drugs and drug paraphernalia found in his vehicle. For reasons that follow, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶ 2 On December 18, 2007, at approximately 1:30 a.m., Officer Lamb of the Department of Public Safety ("DPS") was patrolling southbound on the Beeline Highway in an unmarked vehicle. He observed Defendant's automobile stopped on the shoulder of the northbound lanes with its four-way emergency flashers activated. The officer continued southbound until he could turn around safely and then headed back to the stopped vehicle to perform a welfare check and determine if the motorist was stranded and needed assistance.

¶ 3 When he was within 300 feet of the vehicle, Officer Lamb turned on his rear emergency lights. As he did so, the officer noticed that the emergency flashers were off and Defendant was driving slowly on the shoulder. The officer activated his front emergency lights to alert Defendant that he was a law enforcement officer.

¶ 4 Defendant stopped on the side of the highway and the officer approached him. When Officer Lamb asked Defendant if everything was alright, Defendant told the officer that he had stopped on the side of the road because he was tired and sleepy. The officer observed that Defendant had a lethargic speech pattern consistent with someone who could be sleep-deprived. In accordance with his routine practice when encountering drivers who may be sleepy, the officer had Defendant exit his vehicle and walk around to ensure he was not driving impaired and could drive home safely.

¶ 5 While speaking with Defendant, Officer Lamb became suspicious of his female passenger after Defendant said he did not know her name, but also told him he had known her for a couple of days. The passenger did not have any identification. Based on statements she made that were inconsistent with those made by Defendant and her admission that she had a prior conviction for prostitution, the officer believed he had encountered a "prostitution situation." Officer Lamb asked Defendant if he would consent to a search of his vehicle, but Defendant declined. The officer stated he would have a K–9 unit sniff around his vehicle, and Defendant responded that he had no problem with that.

¶ 6 The officer ran a check on Defendant's driver's license and determined that it had been suspended. When the officer asked about the reported suspension, Defendant admitted his license was suspended due to his failure to appear in court. The officer informed Defendant that he had to impound his vehicle and told him he was not free to go. Pursuant to DPS policy, Officer Lamb conducted an inventory search of the vehicle prior to having it towed. In the front center console, the officer found a "stem or crack pipe" containing what was later confirmed to be crack cocaine, together with a baggie of methamphetamine and a small plastic container with additional crack cocaine.

¶ 7 Defendant was charged with possession of narcotic drugs, a class 4 felony; possession of dangerous drugs, a class 4 felony; and possession of drug paraphernalia, a class 6 felony. Prior to trial, Defendant filed separate motions to suppress evidence, alleging that the drugs and drug paraphernalia were obtained as a result of both an unlawful seizure and an illegal search. Following an evidentiary hearing at which both Officer Lamb and Defendant testified, the trial court denied the motions. The court found that the initial stop was a proper exercise of the community caretaking function and that the search was a valid inventory search.

¶ 8 Defendant submitted the issue of guilt to the trial court on a stipulated record and was found guilty on all three counts as charged. The trial court suspended Defen-

dant's sentences and placed him on probation for two years, with a deferred jail term of six months and fines totaling $4,520.

¶ 9 Defendant timely appealed. We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution and Arizona Revised Statutes ("A.R.S.") sections 12–120.21(A)(1) (2003), 13–4031 (2010), and 13–4033(A)(4) (2010).

## DISCUSSION

¶ 10 A trial court's denial of a motion to suppress will not be disturbed on appeal absent an abuse of discretion. *State v. Spears*, 184 Ariz. 277, 284, 908 P.2d 1062, 1069 (1996). In conducting our review, we defer to the trial court's findings of fact underlying its ruling. *State v. Lopez*, 198 Ariz. 420, 421, ¶ 7, 10 P.3d 1207, 1208 (App. 2000). If the trial court has not articulated specific findings, we will infer those factual findings reasonably supported by the record that are necessary to support the trial court's ruling. *State v. Russell*, 175 Ariz. 529, 533, 858 P.2d 674, 678 (App.1993). We view the evidence presented at the suppression hearing in the light most favorable to upholding the trial court's ruling. *State v. Rosengren*, 199 Ariz. 112, 116, ¶ 9, 14 P.3d 303, 307 (App.2000).

**The Stop**

¶ 11 The Fourth Amendment to the United States Constitution provides that:

> The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment does not forbid all searches and seizures, only those that are unreasonable. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). As a general rule, in order to be reasonable, a search or seizure must be made upon probable cause and pursuant to a legally issued warrant. *Vale v. Louisiana*, 399 U.S. 30, 34, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970). However, "because the ultimate touchstone of the Fourth Amendment is reasonableness," those requirements are subject to certain exceptions. *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403, 126 S.Ct. 1943, 164 L.Ed.2d 650 (2006). *See also Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967) (stating that Fourth Amendment's requirement of valid warrant supported by probable cause "subject only to a few specifically established and well-delineated exceptions").

¶ 12 In *Cady v. Dombrowski*, 413 U.S. 433, 441, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973), the United States Supreme Court recognized that because of the extensive regulation of motor vehicles by states and localities and the frequency with which vehicles can become disabled or involved in an accident, local law enforcement may appropriately and lawfully engage in what the Court described as "community caretaking functions." Such "police-citizen" contacts relating to public safety are "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Id.*

¶ 13 In *Cady*, after an accident, a Chicago police officer was arrested for drunken driving, later became comatose, and his vehicle was towed to a nearby garage. Local police officers conducted a search of the trunk because they had reason to believe that it contained a service revolver belonging to the driver. *Id.* at 442–43, 93 S.Ct. 2523. The Supreme Court held that based on the community caretaking exception to the warrant requirement, the warrantless search of the trunk of the vehicle to retrieve the revolver was reasonable under the Fourth Amendment in order to protect "the general public who might be endangered if an intruder removed a revolver from the trunk of the vehicle" and it fell into improper hands. *Id.* at 447, 93 S.Ct. 2523.

¶ 14 In a context unrelated to vehicles, but involving an issue of public safety, in *In re Tiffany O.*, 217 Ariz. 370, 376, ¶ 21, 174 P.3d 282, 288 (App.2007), this court acknowledged the existence of the police's communi-

ty caretaking function as an exception to a warrantless search, although we held it inapplicable under the facts of the case. *Id.* at 377–78, ¶¶ 26–32, 174 P.3d at 289–90. As stated in *Tiffany O.,* the community caretaking function permits a warrantless intrusion on privacy interests when the intrusion is:

> suitably circumscribed to serve the exigency which prompted it. . . . The officer's . . . conduct must be carefully limited to achieving the objective which justified the [search]—the officer may do no more than is reasonably necessary to ascertain whether someone is in need of assistance [or property is at risk] and to provide that assistance [or to protect that property.]

*Id.* at 376, ¶ 21, 174 P.3d at 282 (quoting *People v. Ray,* 21 Cal.4th 464, 88 Cal.Rptr.2d 1, 981 P.2d 928, 937 (1999)).

¶ 15 In *Ray,* the California Supreme Court set forth a standard approved by this court in *Tiffany O.,* for determining whether there had been a proper exercise of the community caretaking function. The court held that:

> The appropriate standard under the community caretaking exception is one of reasonableness: Given the known facts, would a prudent and reasonable officer have perceived a need to act in the proper discharge of his or her community caretaking functions? . . . [A]s in other contexts, "in determining whether the officer acted reasonably, due weight must be given not to his unparticularized suspicions or 'hunches,' but to the reasonable inferences which he is entitled to draw from the facts in the light of his experience; in other words, he must be able to point to specific and articulable facts from which he concluded that his action was necessary."

88 Cal.Rptr.2d 1, 981 P.2d at 937 (quoting *People v. Block,* 6 Cal.3d 239, 103 Cal.Rptr. 281, 499 P.2d 961 (1971)).

¶ 16 Defendant argues that the trial court erred in finding the officer's initial stop of his vehicle was a valid exercise of the community caretaking function. Specifically, he maintains that Officer Lamb did not have a reasonable basis for believing Defendant required assistance because he had turned off his emergency flashers and was in the process of returning to the highway when the stop was made. "The reasonableness of a police officer's response in a given situation is a question of fact for the trial court." *State v. Fisher,* 141 Ariz. 227, 238, 686 P.2d 750, 761 (1984) (upholding trial court's finding that it was reasonable for officers to believe an emergency situation existed that justified a warrantless search of premises).

¶ 17 Applying the standard articulated in Ray and adopted in *Tiffany O.,* we agree with the trial court that the officer's action in stopping Defendant was justified as a proper community caretaking function. As the officer testified, one obligation of the DPS Highway Patrol is to check on stranded motorists to ensure their welfare and offer assistance. At the time Officer Lamb initiated the stop, he knew that Defendant's vehicle had been stopped on the side of the road with its emergency flashers activated and was then moving very slowly along the shoulder of the road with its flashers off. Defendant acknowledged that when the officer approached his vehicle, he was still on the shoulder of the road, that he had traveled about 100 feet on the shoulder before being stopped, and that his vehicle never exceeded twenty miles per hour.

¶ 18 Based on the facts known to Officer Lamb at the time of the stop, it was reasonable for him to believe Defendant was having some emergency or trouble, that Defendant may have needed assistance and that a welfare check was necessary. Although Defendant's vehicle was no longer at a complete stop, because Defendant was driving slowly on the shoulder of the road for some distance, Officer Lamb's cause for concern was not alleviated. He could reasonably believe that Defendant had a continuing problem and needed help.

¶ 19 Further, the officer's action in stopping the vehicle was "suitably circumscribed to serve the exigency which prompted it." *Ray,* 88 Cal.Rptr.2d 1, 981 P.2d at 937. It was only after the officer noticed other suspicious behavior while performing the welfare check that his inquiry changed from ascertaining if Defendant needed assistance into a potential criminal investigation. Based on this record, we conclude that Officer Lamb's

initial stop of Defendant was reasonable, that it was an appropriate exercise of his community caretaking function and that it did not violate the Fourth Amendment. The trial court, therefore, did not abuse its discretion in denying Defendant's motion to suppress on this ground.

### The Search

¶ 20 Defendant also contends that the trial court abused its discretion in ruling that the subsequent search of his vehicle was a valid inventory search. Inventory searches are a well-defined community caretaking exception to the probable cause and warrant requirements of the Fourth Amendment. *Colorado v. Bertine*, 479 U.S. 367, 371, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); *South Dakota v. Opperman*, 428 U.S. 364, 370–372, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976). "[I]nventory procedures serve to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372, 107 S.Ct. 738.

¶ 21 An inventory search of a vehicle is valid if two requirements are met: (1) law enforcement officials must have lawful possession or custody of the vehicle, and (2) the inventory search must have been conducted in good faith and not used as a subterfuge for a warrantless search. *State v. Schutte*, 117 Ariz. 482, 486, 573 P.2d 882, 886 (App.1977). Thus, when the inventory search is conducted solely for the purpose of discovering evidence of a crime, it is invalid. *State v. Davis*, 154 Ariz. 370, 375, 742 P.2d 1356, 1361 (App.1987). However, an inventory search conducted pursuant to standard procedures is presumptively considered to have been conducted in good faith and therefore reasonable. *Bertine*, 479 U.S. at 372, 107 S.Ct. 738; *Opperman*, 428 U.S. at 372, 96 S.Ct. 3092.

¶ 22 Here, because a records check revealed that Defendant was driving on a suspended license, Officer Lamb was required to impound his vehicle for thirty days. *See* A.R.S. § 28–3511(A)(1), (E) (Supp.2007). Because the officer had lawful possession of the vehicle, the first requirement for a valid inventory search was satisfied. *Cf. In re One 1969 Chevrolet 2–Door, I.D. No. 136379K430353*, 121 Ariz. 532, 535–36, 591 P.2d 1309, 1312–13 (App.1979) (holding that inventory search was invalid where officers not required to take physical custody of the vehicle, the vehicle did not create a safety hazard and police made no inquiry into other methods of protecting vehicle).

¶ 23 Turning to the second requirement of good faith, Defendant does not dispute that DPS policy requires that its officers conduct an inventory search of vehicles they impound. He contends instead that, notwithstanding the policy, the inventory search was simply a pretext for a warrantless search for evidence. He advances two arguments to support this claim.

¶ 24 First, he argues that pretext is established because Officer Lamb failed to make an adequate inventory of the vehicle. The record shows, however, that the officer prepared the standard DPS "Vehicle Removal Report." In this report, he itemized the presence and condition of various vehicle accessories and listed personal property left in the vehicle, including two plastic bags with assorted clothing and one cell phone. Although there were some miscellaneous items of minimal value also in the vehicle that were not listed in the report, such as a compact disc and paper receipts, such omissions do not render the inventory invalid. On this point, Officer Lamb testified that it was DPS policy to note only "items of value." Defendant cites no cases, and we found none, holding that every item in the vehicle, regardless of value, must be included on the inventory report in order to find an inventory search valid. To the extent decisions have addressed this issue, they are directly to the contrary. *See, e.g., State v. Ture*, 632 N.W.2d 621, 629 (Minn.2001) (holding that failure to list every item in vehicle does not render an inventory search conducted according to standard procedures invalid). We, therefore, reject this argument.

¶ 25 Defendant next argues that the inventory search was pretextual because Officer Lamb expressed an interest in searching the vehicle even before he learned of the sus-

pended license. We reject this argument, however, because although Officer Lamb had asked Defendant if he could search his vehicle before he acquired facts mandating the impound, he already suspected that he was "looking at a prostitution case" and believed there might be evidence relating to that in the vehicle. Further, while this fact may be relevant to determine whether the officer acted in good faith, it does not render the inventory search invalid. *See In re One 1965 Econoline, I.D. No. E16JH702043*, 109 Ariz. 433, 435, 511 P.2d 168, 170 (1973) (holding that subjective motives of police need not be "simplistically pure"; rather, the inquiry is whether the inventory search was reasonable under objective standards).

¶ 26 Because DPS policy required an inventory search, there was a presumption that the search was made in good faith. Officer Lamb testified that he performed an inventory search and not a search for evidence. By concluding that the search was a valid inventory search, the trial court implicitly found the officer's testimony credible. We can reverse this finding only if it is not supported by sufficient evidence. *Rosengren*, 199 Ariz. at 116, ¶ 9, 14 P.3d at 307. The evidence here supports the trial court's implied finding that pursuant to DPS policy, Officer Lamb conducted a good faith inventory search, that such search was reasonable and did not violate the Fourth Amendment. *See Bertine*, 479 U.S. at 372, 107 S.Ct. 738. The trial court did not abuse its discretion in denying Defendant's motion to suppress evidence on this ground.

### CONCLUSION

¶ 27 Because both the stop and search of the Defendant's vehicle were valid, the trial court did not err in denying his motions to suppress. Accordingly, we affirm Defendant's convictions and sentences.

CONCURRING: PHILIP HALL, and JOHN C. GEMMILL, Judges.