NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

PAUL SAMUEL WALKER, *Appellant.*

No. 1 CA-CR 15-0105
FILED 2-16-2016

Appeal from the Superior Court in Mohave County
No. S8015CR201400859
The Honorable Rick A. Williams, Judge

**AFFIRMED AS MODIFIED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joseph T. Maziarz
*Counsel for Appellee*

Law Office of Daniel DeRienzo, PLLC, Prescott Valley
By Daniel J. DeRienzo
*Counsel for Appellant*

---

## MEMORANDUM DECISION

Judge Peter B. Swann delivered the decision of the court, in which Presiding Judge Kenton D. Jones and Judge Samuel A. Thumma joined.

---

**S W A N N**, Judge:

**¶1**        Paul Samuel Walker ("Defendant") appeals his convictions for possession of a dangerous drug for sale and possession of drug paraphernalia.

**¶2**        This case comes to us as an appeal under *Anders v. California*, 386 U.S. 738 (1967), and *State v. Leon*, 104 Ariz. 297 (1969). Defendant's appellate counsel raises several issues for review: (1) Defendant's request to represent himself at trial; (2) the trial court's denial of Defendant's motion for change of counsel; (3) the trial court's denial of Defendant's motion at the final management conference to continue the trial; (4) the trial court's denial of the motion for a directed verdict; and (5) the legality of the stop and search of Defendant's truck and seizure of its contents. Defendant did not file a supplemental brief.

**¶3**        Having searched the record and considered the briefing, we discern no fundamental error. We therefore affirm Defendant's convictions, but we modify his sentences to reflect the correct credit for presentence incarceration.

### FACTS AND PROCEDURAL HISTORY

**¶4**        In June 2014, Defendant approached a 17-year-old girl ("Witness"), her sister, and a friend as the group left a Narcotics Anonymous ("NA") meeting. Defendant drove a distinctive white pick-up truck with "Paul Walker 702" in large letters on the side and several large speakers visible from the back. He pulled over to the side of the road and began talking to them. After Witness said she was coming from an NA meeting, he displayed a case containing syringes and baggies with what appeared to be methamphetamine and said if they wanted a "hookup" to look him up on social media as "Paul Walker 702." Witness became upset because she had been a methamphetamine user; she left with her sister. When she arrived at home, she told her mother about her conversation with Defendant, and her mother called the police.

¶5 After the report, a patrol officer spotted the truck Witness described and stopped it. When the officer asked for his license, Defendant admitted that he was driving with a suspended license, which the officer testified he confirmed. Because of the admitted suspended license, the officer called for a tow truck and conducted an inventory search of the truck. He found a digital scale, a black and silver case with four bags of a white crystalline substance, two used syringes, one loaded syringe, and two hand-held electronic devices. The crime lab later determined the substance was approximately 98 grams of methamphetamine, over three ounces. When the officer questioned Defendant later at the station, he initially denied using methamphetamine. But after the officer spotted fresh "track marks" consistent with intravenous methamphetamine use, Defendant admitted to using drugs to get back at his girlfriend for her cheating and drug use, but he denied any intention to sell.

¶6 He was later charged with possession of dangerous drugs for sale, possession of drug paraphernalia and driving with a suspended license. Defendant asked to represent himself, and the trial court informed him of the consequences of self-representation. It explained to Defendant that if he were convicted, he would be facing a prison sentence of five to fifteen years. The court characterized self-representation as a "bad idea" and advised him that "things generally don't go well when people represent themselves." The court also informed Defendant that he would have to have an additional hearing and sign a waiver in order to represent himself. When the court asked if he still intended to represent himself, Defendant stated that he was "fine with keeping [current counsel]."

¶7 Defendant later requested a change of counsel because his attorney did not file motions to modify release conditions and to continue the trial at Defendant's request. He stated that he wanted the trial date to be postponed and to be released in order to make more money for his family in the event he was convicted and incarcerated. His counsel refused to file the motion because he felt it was not a valid reason for a continuance, which the court confirmed. The court denied the request to change counsel, finding that Defendant's counsel was adequately preparing for trial and had not engaged in any improper conduct. During the final trial management conference, Defendant's counsel requested a continuance. Defendant had disclosed some witness names before the conference, and counsel wanted time to interview the witnesses before trial. The state protested that a continuance would conflict with another

case and might affect the availability of witnesses, and the court denied the motion.

¶8        At trial, the investigating officer testified that a person with multiple ounces of methamphetamine is typically selling; common use is only a tenth of a gram.  He also testified that possessing packaging, scales and ledgers also pointed to intent to sell.  Witness also testified to her encounter with Defendant and her belief that he was trying to sell her methamphetamine.

¶9        The court granted Defendant's Rule 20 motion on the charge of driving with a suspended license; though Defendant admitted to driving with a suspended license and the officer claimed he verified Defendant's statement, the state presented no evidence demonstrating that his license was suspended.  But the court denied the motion on the other charges.

¶10        Defendant elected to testify. He testified that he was using methamphetamine self-destructively after he had his child taken by authorities in another state and he left his girlfriend.  He claimed his intentionally abusive use explained the unusually large amount of drugs he had, and that he had used 13 grams in two to three days.  He testified that he began talking to Witness because she had remarked on the size of his speakers; the "hookup" he referred to was not methamphetamine but a demonstration of his audio equipment.  The jury convicted him on both remaining counts.  Defendant was sentenced to five years in prison with 149 days of presentence incarceration credit for possession of dangerous drugs with intent to sell, and four months to run concurrently for possession of drug paraphernalia.  Defendant appeals.

## DISCUSSION

¶11        Defendant did not submit a supplemental brief, but his counsel suggests several areas for review: (1) Defendant's request to represent himself at trial; (2) the trial court's denial of Defendant's motion for change of counsel; (3) the trial court's denial of Defendant's motion at the final management conference to continue the trial; (4) the trial court's denial of the Rule 20 motion for a directed verdict on Counts 1 and 2; and (5) the legality of the stop and search of Defendant's truck and the seizure of its contents.

I.      DEFENDANT'S REQUEST TO REPRESENT HIMSELF AT TRIAL

¶12         A defendant has a constitutional right to represent himself if he waives the assistance of counsel "knowingly and intelligently." *Faretta v. California*, 422 U.S. 806, 835 (1975) (citation omitted).  Before he can waive his rights, he must be made aware of the risks of self-representation. *State v. McLemore*, 230 Ariz. 571, 578, ¶ 22 (2012).  He should be made to understand "(1) the nature of the charges against him, (2) the dangers and disadvantages of self-representation, and (3) the possible punishment upon conviction." *Id.* (citation omitted).  If the court erroneously denies a defendant the right to represent himself by waiving counsel, we must reverse. *Id.* at ¶ 23.

¶13         Defendant here voluntarily withdrew his request to represent himself.  The court explained to Defendant that if he was convicted, he would be facing a prison sentence of five to fifteen years.  The court characterized self-representation as a "bad idea" and advised him that "things generally don't go well when people represent themselves."  The court also informed him that he would have to have an additional hearing and sign a waiver in order to represent himself.  When the court asked if he still intended to represent himself, Defendant stated he was "fine with keeping [current counsel]."  While the court dissuaded Defendant from representing himself, it did not deny him the right.  There was no error.

II.     DENIAL OF MOTION FOR CHANGE OF COUNSEL

¶14         A defendant has a constitutional right to competent representation.  U.S. Const. amend. VI; Ariz. Const. art. II, § 24.  He does not, however, have the right to "counsel of choice, or to a meaningful relationship with his . . . attorney." *State v. Moody*, 192 Ariz. 505, 507, ¶ 11 (1998).  The court considers several factors in determining whether a substitution of counsel is necessary, including "whether an irreconcilable conflict exists between counsel and the accused, and whether new counsel would be confronted with the same conflict; the timing of the motion; inconvenience to witnesses; the time period already elapsed between the alleged offense and trial; the proclivity of the defendant to change counsel; and quality of counsel." *State v. LaGrand*, 152 Ariz. 483, 486-87 (1987).  We review the court's denial of the motion for change of counsel for an abuse of discretion. *Id.*

¶15         Here, Defendant requested a change of counsel because his attorney did not file motions to modify release conditions and to continue the trial date at Defendant's request.  His counsel had refused because he

did not think Defendant's reason for a continuance was valid, which the court confirmed. The court found that Defendant's counsel was preparing for trial and had not engaged in any improper conduct. As that was Defendant's only complaint about counsel, there was no other evidence of irreconcilable conflict between Defendant and counsel. The court did not abuse its discretion.

## III. DENIAL OF MOTION TO CONTINUE TRIAL

**¶16** The court must grant a continuance "only upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice." Ariz. R. Crim. P. 8.5(b). It considers "the rights of the defendant and any victim to a speedy disposition of the case" in making a decision. *Id.* We review a denial of a motion to continue for an abuse of discretion and will not reverse unless the "discretion has been abused so as to result in prejudice to the defendant." *State v. Blodgette*, 121 Ariz. 392, 394 (1979).

**¶17** Defendant's counsel requested the continuance at the final management conference because *Defendant* had not revealed potential witnesses to him, and counsel wanted to interview potential witnesses before the trial. The court denied the motion because the December trial date was fixed in September, giving Defendant ample opportunity to disclose defense witnesses to counsel and have them interviewed. There was no showing that these witnesses could not reasonably have been revealed to counsel in a timely manner, nor does the record reveal that their testimony would have been critical to the defense. Given the facts here, the trial court did not abuse its discretion.

## IV. DENIAL OF RULE 20 MOTION ON COUNTS 1 AND 2

**¶18** The court is required to enter a judgment of acquittal "if there is no substantial evidence to warrant a conviction." Ariz. R. Crim. P. 20(a). Substantial evidence is "such proof that reasonable persons could accept as adequate and sufficient to support a conclusion of defendant's guilt beyond a reasonable doubt." *State v. Harm,* 236 Ariz. 402, 406, ¶ 11 (App. 2015) (citation and internal quotation marks omitted). We examine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Buccheri-Bianca*, 233 Ariz. 324, 330-31, ¶ 24 (App. 2013) (citation omitted). We review a denial of a motion for judgment of acquittal de novo. *State v. Bon*, 236 Ariz. 249, 251, ¶ 5 (App. 2014).

¶19      Regarding Count 1, the state had to prove that Defendant knowingly possessed a dangerous drug for sale. A.R.S. § 13-3407(A)(2). Methamphetamine is a dangerous drug pursuant to A.R.S. § 13-3401(6)(c)(xxxviii). For Count 2, the state had to prove that Defendant used, or possessed and intended to use, drug paraphernalia to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale or otherwise introduce [an illegal drug] into the human body." A.R.S. § 13-3415(A). Drug paraphernalia can be any equipment, products or materials used for those purposes, including hypodermic needles and scales. A.R.S. § 13-3415(F)(2)(e), (k).

¶20      The state presented substantial evidence of each element of the two charges. For the possession of drug paraphernalia charge, Defendant did not deny that he possessed the syringes and scale or that he intended to use them. The officer found in his truck at least one empty, used syringe, and at least one loaded and ready to use. Given Defendant's admission concerning the paraphernalia and the evidence police found in the truck to support it, the court properly denied the Rule 20 motion on Count 2.

¶21      Regarding Count 1, Defendant did not deny that he knowingly possessed methamphetamine, only that he intended to sell it. The crime lab technician confirmed that the substance found in Defendant's truck was methamphetamine. The investigating officer testified that the quantity that Defendant possessed usually indicated an intent to sell because it was substantially more than a heavy user would use in several months' time. He also testified that it would be unusual for a dealer to sell a large quantity to someone he did not know. In the truck, Defendant also had a scale, which could support an inference that he intended to sell the drug. Witness testified that he had approached her and told her how to contact him if she wanted a "hookup," which she took to mean a drug sale. The court properly denied the Rule 20 motion on Count 1.

V.    LEGALITY OF STOP AND SEARCH OF TRUCK AND SEIZURE OF CONTENTS

¶22      The Fourth Amendment guarantees protection against unreasonable searches and seizures. U.S. Const. amend IV. However, law enforcement officers may stop a vehicle when they have articulable, reasonable suspicion based on the totality of the circumstances that it was involved in criminal activity. *State v. Teagle*, 217 Ariz. 17, 22-23, ¶ 20 (App. 2007). When the arresting officer pulled Defendant over, the officer had

taken Witness's statement about her encounter with Defendant and received a noise complaint related to Defendant's truck. At the very least, the officer would reasonably believe Defendant was in possession of dangerous drugs at the time he stopped the vehicle.

¶23 Warrantless searches are presumed illegal unless they are justified by one of the "jealously and carefully drawn" exceptions to the warrant requirement. *Jones v. United States*, 357 U.S. 493, 499 (1958). One such exception is the inventory search. Police may conduct an inventory search of a vehicle if it is "conducted pursuant to standardized criteria and not because of mere suspicions of criminal activity." *State v. Jones*, 185 Ariz. 471, 482 (1996) (citation omitted). Defendant told the officer he was driving with a suspended license, which required towing the truck away pursuant to A.R.S. § 28-3511(A)(1)(a). The truck was then lawfully in police custody, and the standard procedure was to conduct an inventory search. The methamphetamine and paraphernalia were visible in the truck at the time the officer opened the passenger-side door. The search fell within a lawful exception to the warrant requirement. *State v. Organ*, 225 Ariz. 43, 48, ¶¶ 21-22 (App. 2010).

¶24 Finally, Defendant was present and represented by counsel at all critical stages of the proceedings. The jury was properly composed of 8 jurors and selected without any evidence of bias. The evidence presented at trial supported Defendant's convictions. The prosecutor did not make any improper arguments in closing. Defendant received a legal sentence under A.R.S. § 13-702. The court credited him with 149 days of presentence incarceration credit. The record reflects, however, that Defendant was entitled to 161 days of presentence incarceration credit under A.R.S. § 13-712(B). The miscalculation constitutes fundamental error. *State v. Ritch*, 160 Ariz. 495, 498 (App. 1989). We therefore modify Defendant's sentences to reflect 161 days of presentence incarceration credit. *See* A.R.S. § 13-4037(A); *State v. Stevens*, 173 Ariz. 494, 496 (App. 1992).

**CONCLUSION**

¶25 For the foregoing reasons, we affirm Defendant's convictions, and we affirm his sentences as modified.

¶26 Defense counsel's obligations pertaining to this appeal have come to an end. *See State v. Shattuck*, 140 Ariz. 582, 584-85 (1984). Unless, upon review, counsel discovers an issue appropriate for petition for review to the Arizona Supreme Court, counsel must only inform Defendant of the status of this appeal and his future options. *Id.*

Defendant has 30 days from the date of this decision to file a petition for review *in propria persona*. *See* Ariz. R. Crim. P. 31.19(a). Upon the court's own motion, Defendant has 30 days from the date of this decision in which to file a motion for reconsideration.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama