NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

LOVETTE SHARMAINE SCOTT, *Appellant.*

No. 1 CA-CR 17-0116
FILED 2-27-2018

Appeal from the Superior Court in Maricopa County
No.  CR2015-146850-001
The Honorable Dean M. Fink, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Alice Jones
*Counsel for Appellee*

Michael J. Dew Attorney at Law, Phoenix
By Michael J. Dew
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Randall M. Howe delivered the decision of the Court, in which Judge Kenton D. Jones and Judge James B. Morse Jr. joined.

---

**H O W E**, Judge:

¶1 Lovette Sharmaine Scott appeals the trial court's denial of his motion to suppress evidence obtained through a protective sweep. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 In October 2015, an undercover officer working on an operation looking for child prostitutes saw an advertisement for someone who appeared to be an underage prostitute and arranged a meeting. They met in an apartment building parking lot, and the woman, not underage, took the undercover officer inside a three-bedroom apartment and led him to one of the bedrooms. Inside the bedroom, the woman agreed to have sex for $160. The undercover officer replied that he had left his cash in his car, and they walked to the apartment entrance. When the undercover officer and the woman opened the front door, other officers entered the apartment and detained the woman in the living room.

¶3 Five to ten police officers conducted a sweep of the apartment. During the sweep, one officer found Scott in an adjacent bedroom lying on a bed. The officers detained Scott and continued to sweep that bedroom and the adjacent bathroom. While an officer shook a blanket on the bed to see if someone else was underneath it, he saw a long gun magazine underneath the mattress. He could not say for certain that he saw a gun, however, and he told the other officers not to include what he observed in the warrant affidavit. Another officer swept a different bedroom and found several guns inside a closet in plain view. During a sweep of the kitchen, the officers found two handguns inside a stack of tires. After the sweep, the officers obtained a search warrant for the apartment.

¶4 In total, the officers found six weapons in the apartment: (1) a rifle with a handmade suppressor, (2) a shotgun with a sawed-off grip that measured 23.5 inches in length, (3) a 9-millimeter semiautomatic handgun, (4) a pistol, (5) a revolver, and (6) a handgun with a long magazine. After

an officer read Scott his *Miranda*[1] rights, Scott admitted that the apartment was his residence, his name was on the lease, and he had lived there for about one year. He also admitted that he had been convicted of a felony and that his right to possess firearms had not been restored. Although Scott did not admit that he owned the guns, he did admit that he knew guns were in his apartment and that he had touched and moved them. Scott stated that the guns were owned by other people living in the apartment, but he did not provide any names.

¶5          The State charged Scott with five counts of misconduct involving weapons, each a class 4 felony. Three counts were based on Scott knowingly possessing firearms while being a prohibited possessor and two counts were based on Scott knowingly possessing prohibited weapons. The State also alleged that Scott had five prior felony convictions. Scott moved to suppress the evidence obtained during the search of his apartment, alleging that the officers had conducted an unlawful sweep of the apartment. He argued that (1) the woman had no authority to invite the undercover officer into his residence; (2) the officers could search only the areas immediately adjoining the place of arrest (the living room), but had exceeded that scope by searching the rest of the apartment; and (3) the sweep was impermissible because the officers did not have a reasonable belief that other women were in the apartment. The State responded that the officers conducted a proper sweep because (1) the woman, a co-occupant, invited an undercover officer into the apartment; (2) she was arrested for prostitution; and (3) the officers were permitted to conduct a sweep for other individuals posing a danger to them.

¶6          The trial court held a suppression hearing. At the hearing, multiple officers testified that the sweep's purpose was to look for people who posed a danger to the officers. The officers testified that they looked only in places in which a person could hide, and the sweep lasted five minutes at most. One officer stated that in his experience dealing with prostitution, an armed person is typically near the woman for her protection. He further testified that in a prostitution situation "there's a good chance there [is] going to be another person inside the residence or on the outside" and that the officers "didn't see anybody on the outside." Another officer testified that in his experience with prostitution that a female prostitute usually worked with a male for "protection" and "management." He further stated that the male will usually be close enough "to keep a visual confirmation[.]" The undercover officer testified that sweeps are performed after prostitution arrests "to make sure that there's

---

[1]          *Miranda v. Arizona*, 384 U.S. 436 (1966).

nobody hiding that could harm us while we're doing the investigation." He further stated that although he did not feel threatened by the prostitute, he believed the sweep was needed "to make sure that no one's going to jump out" and attack them because he had past experiences in which men had been hiding with guns to protect the prostitute. Additionally, photographs were admitted into evidence showing about six pairs of shoes and three bicycles in the living room and kitchen.

¶7 The trial court denied the motion to suppress. The court found that the undercover officer legally entered Scott's residence when the woman invited him into the apartment. The court also found that the woman's arrest occurred in the apartment and that the officers were not required to remove her from the residence while the investigation took place. Furthermore, the court found that the sweep was legal, and the officers did not exceed the scope of the sweep because they looked only in places where a person could be.

¶8 At trial, Scott stipulated that he had a prior felony conviction and that his rights to possess a firearm had not been restored. The jury found Scott guilty on all five counts. The trial court determined that the State had proved beyond a reasonable doubt that Scott had five prior felony convictions and used two convictions as historical prior felony convictions. The trial court sentenced Scott to concurrent ten-year prison terms for the five counts. Scott timely appealed.

## DISCUSSION

¶9 Scott claims that the trial court erred by denying his motion to suppress evidence obtained through the sweep. He argues that the sweep was improper because the officers lacked a reasonable belief, based on specific and articulable facts, that the area contained someone who posed a danger to others.[2] The denial of a motion to suppress is reviewed for an abuse of discretion, and the facts are considered in the light most favorable to sustaining the ruling. *State v. Valenzuela*, 239 Ariz. 299, 302 ¶ 9 (2016).

---

[2] At the trial court, Scott also argued that (1) the sweep violated the Arizona Constitution, (2) the sweep was too broad under the first exception discussed in *Maryland v. Buie*, 494 U.S. 325 (1990), and (3) the woman did not have legal authority to invite the undercover officer into his residence. Scott has not raised these arguments in his appellate brief, and thus, has abandoned and waived these claims. *See State v. Carver*, 160 Ariz. 167, 175 (1989).

While we defer to the trial court's factual findings, we conduct de novo review of its legal conclusions. *State v. Adair*, 241 Ariz. 58, 60 ¶ 9 (2016).

¶10        The Fourth Amendment protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. "As a general rule, in order to be reasonable, a search or seizure must be made upon probable cause and pursuant to a legally issued warrant." *State v. Organ*, 225 Ariz. 43, 46 ¶ 11 (App. 2010). These general requirements for reasonable searches, however, are subject to certain exceptions. *Id.* A protective sweep is a recognized exception to the warrant requirement. *Buie*, 494 U.S. at 334; *State v. Fisher*, 226 Ariz. 563, 565 ¶ 8 (2011). "A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding." *Buie*, 494 U.S. at 327.

¶11        In *Buie*, the Supreme Court identified two types of protective sweeps. *Id.* at 334. First, without probable cause or reasonable suspicion, officers may "look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." *Id.* Second, officers may conduct a broader search if "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* The Court also noted that the reasonable belief standard was the same as the reasonable suspicion standard discussed in *Terry v. Ohio*, 392 U.S. 1 (1968) and *Michigan v. Long*, 463 U.S. 1032 (1983). *Id.* Here, sufficient evidence supports the trial court's finding that the officers conducted a legal protective sweep, and thus, the court did not abuse its discretion.

¶12        A woman led the undercover officer into the three-bedroom apartment and agreed to have sex for money. Officers then arrested the woman in the living room. Photographs admitted into evidence showed that about six pairs of shoes and three bicycles were present in the living room and kitchen. Furthermore, multiple officers testified that based on their training and experience, women who engage in prostitution usually have an armed male nearby for protection. Accordingly, these articulable facts combined with the officers' rational inferences would warrant an officer to reasonably believe that another area of the apartment might contain a person who posed a danger to others at the scene. Additionally, the officers limited the sweep for people and did not look for evidence. Thus, the officers conducted a lawful sweep under the second *Buie* exception.

¶13 Relying on *Fisher*, Scott counters that the sweep of his residence was unlawful. In *Fisher*, the sweep occurred after the defendant and two other people voluntarily exited the defendant's apartment. 226 Ariz. at 564–65 ¶ 3. The officers conducted the sweep to look for an unaccounted-for weapon. *Id.* at 565 ¶ 4. Although a weapon was unaccounted for, nothing indicated that anyone else was inside the apartment. *Id.* at 567 ¶ 15. The court noted that "[o]fficers cannot conduct protective sweeps based on mere speculation or the general risk inherent in all police work." *Id.* Because the officers did not articulate facts to establish a reasonable belief that someone else was in the apartment, the court held that the protective sweep was invalid. *Id.*

¶14 The current case is distinguishable from *Fisher*. Unlike *Fisher*, the officers had a reasonable belief that another person could be in the apartment because they saw that it had multiple bedrooms, bicycles, and pairs of shoes. Also, the officers' training and experience in prostitution indicated that an armed male was likely nearby. And unlike *Fisher*, the woman was arrested inside the apartment and the investigation occurred within the residence. Although the officers were not certain that another person was in the apartment, the facts support the officers' reasonable belief that someone else was in there. As such, the sweep here was not conducted based on mere speculation or the general risk inherent to all police work, and it fell within the second *Buie* exception.

## CONCLUSION

¶15 For the foregoing reasons, we affirm.

