NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

GARY T. AQUINO, *Appellant*.

No. 1 CA-CR 19-0381
FILED 8-20-2020

Appeal from the Superior Court in Maricopa County
No.  CR 2018-001663-001
The Honorable Andrew J. Russell, Judge *Pro Tem*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Dawnese Hustad
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Lawrence F. Winthrop and Chief Judge Peter B. Swann[1] joined.

---

**C A M P B E L L**, Judge:

¶1　　　　Gary Aquino appeals his convictions and sentences for several drug possession and paraphernalia counts. Challenging the constitutionality of the Glendale Police Department ("GPD") inventory search policy, Aquino asserts that officers unlawfully searched a closed container found inside his impounded vehicle. In the alternative, he argues that even if GPD's policy is legally sufficient, the officers failed to abide by its terms in this case, thereby rendering their inventory search illegal. We disagree and affirm.

**BACKGROUND**

¶2　　　　After observing Aquino's vehicle fail to stop at an intersection, Glendale Police Officer Clontz initiated a traffic stop. Once Aquino's vehicle came to a stop, the officer ran its license plate and discovered that the plate number was registered to a different vehicle. When Officer Clontz subsequently ran a search on the photo identification card Aquino provided him, he learned that Aquino's driver's license was suspended.

¶3　　　　At that point, Officer Clontz's backup, Officer Doughty, arrived. Officer Clontz advised Officer Doughty that due to the suspension of Aquino's driver's license, the vehicle needed to be impounded. Officer Doughty began taking inventory of the items in Aquino's vehicle, listing the items he removed from the vehicle for safekeeping on a vehicle removal report form.

---

[1] Chief Judge Peter B. Swann replaces the Honorable Kenton D. Jones, who was originally assigned to this panel. Judge Swann has read the briefs and reviewed the record.

¶4        During his search of the vehicle's interior, Officer Doughty removed a black bag from the front passenger seat. According to the officer, the bag was not locked and may have been open. Inside, Officer Doughty found a clear plastic bag with a white crystalline substance that he believed to be methamphetamine.

¶5        Officer Doughty then abandoned his inventory search and, based on probable cause, proceeded to search the vehicle for other contraband. He found two paper towels containing what appeared to be marijuana in one and methamphetamine in another. One paper towel was tucked under the gearshift molding and the other paper towel was found in a hole behind the loose car stereo.

¶6        When questioned at the scene, Aquino admitted that the substances were methamphetamine and marijuana. Subsequent lab testing confirmed that the substances were in fact methamphetamine and marijuana.

¶7        The State charged Aquino with possession or use of dangerous drugs, possession or use of marijuana, and possession of drug paraphernalia. Before trial, Aquino filed a motion to suppress evidence, alleging that the drugs and paraphernalia (the packaging for the drugs) seized from his vehicle were obtained through an illegal search. After an evidentiary hearing, the superior court denied his motion. The court found that the initial stop was justified based on the traffic infraction and because the car's license plate number was registered to a different vehicle. And, once the officer determined that Aquino's driver's license was suspended, he was required to impound the car. The court also found that items of value were properly removed from the vehicle and catalogued prior to impound pursuant to department policy. Accordingly, Officer Doughty found the methamphetamine as a part of a valid inventory search. Once the methamphetamine was discovered, the inventory search lawfully changed to a warrantless search of the vehicle supported by probable cause.

¶8        After a jury trial, Aquino was convicted on all three counts. He timely appealed from his convictions and sentences.

**DISCUSSION**

¶9        Aquino appeals the denial of his motion to suppress evidence. He asserts that the inventory search was unlawful because GPD does not have a sufficient policy establishing standardized procedures for searching closed containers during inventory searches. Alternatively, to the extent a

sufficient policy exists, he contends the officers' failure to follow the policy rendered the inventory search unlawful.

¶10        "We review a denial of a motion to suppress for an abuse of discretion, but review constitutional issues de novo." *State v. Driscoll*, 238 Ariz. 432, 433, ¶ 2 (App. 2015) (quoting *State v. Gonzalez*, 235 Ariz. 212, 214, ¶ 7 (App. 2014)). In conducting our review, we view the evidence presented in the light most favorable to upholding the superior court's ruling and defer to the court's findings of fact. *State v. Organ*, 225 Ariz. 43, 46, ¶ 10 (App. 2010) (citation omitted).

¶11        The Fourth Amendment does not forbid all searches and seizures, only those that are unreasonable. *Elkins v. United States*, 364 U.S. 206, 222, (1960). As a general rule, in order to be reasonable, a search or seizure must be made upon probable cause and pursuant to a legally issued warrant. *Vale v. Louisiana*, 399 U.S. 30, 34 (1970). However, "because the ultimate touchstone of the Fourth Amendment is reasonableness, those requirements are subject to certain exceptions." *Organ*, 225 Ariz. at 46, ¶ 11 (citing *Brigham City, Utah v. Stuart*, 547 U.S. 398, 403 (2006)); *see also Katz v. United States*, 389 U.S. 347, 357 (1967) (stating that the Fourth Amendment's requirement of a valid warrant supported by probable cause is "subject only to a few specifically established and well-delineated exceptions").

¶12        "Inventory searches are a well-defined community caretaking exception to the probable cause and warrant requirements of the Fourth Amendment." *Organ*, 225 Ariz. at 48, ¶ 20 (citing *Colorado v. Bertine*, 479 U.S. 367, 371 (1987)). Inventory procedures serve three "strong governmental interests": "[1] to protect an owner's property while it is in the custody of the police, [2] to insure against claims of lost, stolen, or vandalized property, and [3] to guard the police from danger." *Bertine*, 479 U.S. at 372. "An inventory search of a vehicle is valid if two requirements are met: (1) law enforcement officials must have lawful possession or custody of the vehicle, and (2) the inventory must have been conducted in good faith and not used as a subterfuge for a warrantless search." *Organ*, 225 Ariz. at 48, ¶ 21.

¶13        Once law enforcement officers determined that Aquino was driving on a suspended license, they were required to impound his vehicle for 30 days. *See* A.R.S. § 28-3511(A)(1)(a), (E). Because Officer Clontz had lawful possession of the vehicle, the first requirement of a valid inventory search was satisfied. *See Organ*, 225 Ariz. at 48, ¶ 22 (citing *In re One 1969 Chevrolet 2-Door, I.D. No. 136379K430353*, 121 Ariz. 532, 535–36 (App. 1979) (holding an inventory search invalid when officers were not required to take physical custody of a vehicle, the vehicle did not create a safety hazard,

4

and police made no inquiry into other methods of protecting the vehicle). Therefore, the only question on appeal is whether the inventory search was conducted in good faith.

¶14          Aquino argues the inventory search was conducted in bad faith because Officer Doughty searched a closed container, the black bag, and the GPD policy does not sufficiently regulate inventory searches of closed containers. He asserts the GPD policy is "Constitutionally inadequate" because it does not "guide . . . officers' execution of inventory searches," but rather only "*refers* to 'department policy'" without offering one. Looking at the written materials and the officers' testimony collectively, we disagree.

¶15          "[A]n inventory search conducted pursuant to standard procedures is presumptively considered to have been conducted in good faith and therefore reasonable," *Organ*, 225 Ariz. at 48, ¶ 21 (citing *Bertine*, 479 U.S. at 372), because this requirement "tend[s] to ensure that the intrusion w[ill] be limited in scope to the extent necessary to carry out the caretaking function." *South Dakota v. Opperman*, 428 U.S. 364, 375 (1976). The requisite standardized procedures may be written or established through officer testimony. *See State v. West*, 176 Ariz. 432, 441 (1993), *overruled on other grounds*, *State v. Rodriguez*, 192 Ariz. 58, 64, ¶ 30 n.7 (1998); *see also Organ*, 225 Ariz. at 48, ¶ 24. While standard procedures that require "opening all containers or of opening no containers are unquestionably permissible, it would be equally permissible, for example, to allow the opening of closed containers whose contents officers determine they are unable to ascertain from examining the containers' exteriors." *Florida v. Wells*, 495 U.S. 1, 4 (1990).

¶16          In *Bertine*, the United States Supreme Court considered whether, and under what circumstances, police officers may inventory the contents of closed containers found in vehicles lawfully taken into their custody. 479 U.S. at 369. During the inventory search of Bertine's impounded vehicle, an officer opened a closed backpack, a nylon bag within the backpack, and closed metal canisters located inside the nylon bag. *Id.* The officer found drugs, contraband, and cash in the canisters. *Id.* Reversing the suppression of this evidence, the Supreme Court acknowledged that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." *Id.* at 374.

¶17          The Supreme Court added that nothing in its jurisprudence "prohibits the exercise of police discretion so long as that discretion is

exercised according to standard criteria and on the basis of something other than suspicion of criminal activity." *Id.* at 375. The standard procedures governing the inventory search of Bertine's vehicle "mandated the opening of closed containers and the listing of their contents." *Id.* at 374 n.6. Accordingly, the Court held that the Fourth Amendment did not prohibit the use of the evidence found during the inventory search of Bertine's vehicle. *Id.* at 375.

**¶18**        The GPD's policy on inventory searches includes searching the car for valuables and completion of a vehicle removal report. This policy required an officer to complete an inventory of valuables removed from the vehicle for safekeeping. At the suppression hearing, Officer Clontz agreed that it is "common practice to inventory a vehicle prior to it being towed" in order to protect the owner and his or her property, as well as to protect the police from any "claims of wrongdoing," such as theft or loss of property. GPD general order 24.106(C) provides, "[a]n inventory taken solely to protect the arrested driver's possession(s) is completely non-exploratory and is not a search. This procedure for safekeeping purposes can best be justified if the officer follows departmental policy in carrying out the inventory process." The vehicle removal report includes a section for creating an inventory in accordance with GPD general order 51.643.

**¶19**        Officer Doughty testified that he searched Aquino's vehicle before it was impounded, in accordance with GPD general order 51.643. While the order begins with the phrase "[i]n any collision . . . ," it goes on to establish what should be removed from a vehicle "where the owner or responsible party for the vehicle is transported from the scene or is otherwise unable to take possession of their vehicle and property . . . ." as here, when law enforcement was required to impound the vehicle. Under these circumstances, ". . . an inventory form shall be filled out describing the vehicle and the property remaining in the vehicle." GPD general order 51.643(B). "Items of value such as wallets . . . and other valuables found at the scene of the collision or left in the vehicle shall be logged into property at the police station for safekeeping if the items cannot be immediately returned to the owner." GPD general order 51.643(C).

**¶20**        A search of an unlocked container that may hold property or effects that need to be listed on the vehicle removal report falls within the GPD policy, including GPD general order 24.106(C) and general order 51.643(B)–(C), and therefore does not violate the Fourth Amendment. *See Wells*, 495 U.S. at 4; *see also United States v. Mundy*, 621 F.3d 283, 290 (3rd Cir. 2010). Because GPD general order 51.643 required Officer Doughty to inventory valuables within the car, which included Aquino's bag, the policy

sufficiently regulates the scope of the search, directing officers to describe "property remaining in the vehicle." *See generally People v. Gipson*, 203 Ill.2d 298, 311 (2003) ("Here, the policy of inventorying anything of value found in the passenger compartment or trunk was sufficient to allow the opening of containers that may contain valuables.").

¶21            In this case, the standard procedures governing inventory searches required Officer Doughty to search the black bag located in the passenger compartment of the vehicle and inventory its contents for safekeeping. The policy is constitutional, and the superior court did not abuse its discretion by denying Aquino's motion to suppress the evidence found during the inventory of his vehicle.

¶22            In the alternative, Aquino argues that even if GPD's policy was sufficient, the officers failed to follow the policy, rendering the inventory search unlawful. We disagree.

¶23            Officer Doughty testified that he carried out the inventory process, which included filling out the vehicle removal report, in accordance with his training and with GPD policy. Aquino points out that Officer Doughty did not "note the disposition of Aquino's wallet" on the tow sheet, nor log it into evidence, and asserts this deviation from the policy rendered the search unlawful. However, GPD general order 51.643 directs officers to log items of value, "such as wallets," into property for safe-keeping at the police station if the items are taken as part of an inventory search. While the search of Aquino's car began as an inventory search and later became a search based on probable cause, the entire bag and its contents were seized as evidence. The bag, including Aquino's identification and phone, were indicia of ownership of the bag containing the methamphetamine. Thus, Officer Doughty did not deviate from the policy.

¶24            Similarly, Aquino asserts the officers' failure to let him retrieve his personal property from the vehicle prior to the inventory search rendered the search unlawful. Aquino does not cite any statute or case law supporting his argument, instead asserting only that this "underscores the random manner" in which officers generally conduct inventory searches. Officer Clontz's testimony established that he impounded Aquino's personal property, logging some items as evidence and others for safekeeping, consistent with GPD policy.

¶25            Lastly, Aquino maintains that Officer "Clontz admitted that GPD's orders are not mandatory, but merely 'general guidelines' . . . ."

However, Officer Clontz clarified that the orders are regarded as "guidelines" because they do not offer step-by-step instructions for how to conduct an inventory search. And, Officer Doughty testified that he completed the inventory search consistent with his training and with GPD policy.

**¶26**    Because Officer Doughty conducted the inventory search in accordance with the written and testimonial standardized procedures, the search was presumptively conducted in good faith. *Organ*, 225 Ariz. at 48, ¶ 21. Based on the evidence presented, the superior court did not abuse its discretion in finding the inventory search was valid under the Fourth Amendment and did not err by denying Aquino's motion to suppress.

## CONCLUSION

**¶27**    For the foregoing reasons, we affirm.



AMY M. WOOD • Clerk of the Court
FILED:    AA

8